UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 03-50033-04 |
| | CIVIL ACTION NO. 05-0210 |
| versus | JUDGE WALTER |
| NICHOLAS GENTRY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Nicholas Gentry ("Defendant") filed a Motion to Vacate (Doc. 252) pursuant to 28 U.S.C. § 2255 on the grounds that his attorney was ineffective because he did not file an appeal. Defendant later filed an Amended Motion (Doc. 288) to include a related claim that counsel was ineffective for not objecting to the loss calculation that was used to determine Defendant's sentence. The Fifth Circuit vacated the sentences of two co-defendants who made the objection at sentencing and then pursued the issue on appeal.

The motion was referred to the undersigned for an evidentiary hearing to resolve factual disputes. That hearing was held on March 10, 2006. After considering the evidence and relevant law, it is recommended, for the reasons that follow, that Defendant's motion be granted by vacating his sentence and that he be re-sentenced in accordance with the Fifth Circuit's holding on the loss calculation issue and pursuant to the new Booker/Fanfan rules.

**Relevant Facts**

    **A. Summary**

    The evidence received at the hearing and the record of this case show the following facts. Defendant and five co-defendants participated in the armed robbery of two armored car guards and stole $780,000 in cash. All six men attempted to make a getaway in a van, but the police spotted them almost immediately. A Shreveport police officer chased the men on I-220. One of the robbers, Regan Gatti, knocked out the rear window of the getaway van and fired several rounds from a rifle. (Defendant tried to fire a rifle, but the gun malfunctioned.) One bullet struck the officer in the left arm after penetrating his car's front window and ricocheting off the steering wheel. The officer's medical expenses and worker's compensation indemnity amounted to $25,753.25.

    Police cornered the men in a residential area. When they confronted Regan Gatti, he fired at them with a pistol. The officers returned fire and hit Gatti in the foot. Gatti was able to run away and break into a nearby residence. He dripped blood from his wound as he ran through the house. All six men soon surrendered or were captured. The cost to repair or replace the damaged carpet, drapes and other items was $17,000.

    Defendant pleaded guilty to bank robbery and use of a firearm during a crime of violence. The presentence report ("PSR") suggested, with respect to the bank robbery count, a guidelines range of 188 to 235 months based, in part, on a calculation of the relevant loss that included not only the robbery proceeds but also (1) the worker's compensation indemnity

and medical expenses associated with the officer's wounds and (2) the home repairs. (The PSR is filed under seal as Government Exhibit 4.) Defendant's counsel, Joseph M. Clark, Sr., did not object to the loss calculation. Defendant received a 226 month sentence on that count, which is within the range suggested in the PSR. A 120 month sentence, to be served consecutively, was imposed for the firearms count. Defendant's counsel did not file an appeal.

Two co-defendants did appeal the loss issue, and the Fifth Circuit held that the worker's compensation indemnity benefits and medical expenses associated with the officer's wounds were not properly included in the computation. If Defendant's guidelines range is recalculated in accordance with the Fifth Circuit's decision, the proper guidelines range is 168 to 210 months. Thus, Defendant's 226 month sentence is 16 months greater than the properly calculated maximum guidelines sentence.[1]

**B. Appeal Never Discussed**

The robbery occurred in Caddo Parish, but the escape attempt ended in Bossier Parish. Criminal charges against the men were instituted in both parishes and in federal court. The Caddo Parish court appointed attorney Joseph M. Clark, Sr. to represent Defendant. Michael and Judy Gentry, Defendant's parents, approached Mr. Clark and asked if he would also represent Defendant with respect to the federal charges. Mr. Clark agreed, and Defendants'

---

[1] Counsel for the Government agreed that Defendant's sentencing guidelines calculations are correct in this regard.

parents agreed to pay a fee of $3,500, with $2,000 down and the balance due in 45 days. Mr. Clark testified that there was no written engagement letter in his file. He said that there was "absolutely no mention" of appellate work during his meeting with Defendants' parents. Mr. Clark testified that he does not do appellate work and that if a client requests an appeal, he refers the client to other attorneys.

Mr. Clark testified that he did not feel the need to speak to Defendant about the scope of his representation, what his fees covered, and the like. With respect to an appeal, Mr. Clark testified that the issue "just never came up" before sentence, after sentence or "up until this very moment." Defendant's father, Michael Gentry, testified that no limitations on the scope of representation were discussed with him, and Mr. Clark never said that his fee did not include an appeal. Michael Gentry, who was himself convicted and sentenced in federal court several years ago, assumed there would be a guilty plea, argument about application of the sentencing guidelines, a sentence, and then an appeal. He was under the impression Mr. Clark would handle the appeal, but he admitted that he never asked Mr. Clark to appeal his son's case, and he only spoke once to Mr. Clark after the sentencing.

Michael Gentry testified that Defendant called him at some point after sentencing and expressed concern about the "time factor." Michael Gentry clarified that this discussion was about the filing of an appeal, which Defendant's brother, a co-defendant, had already filed. Michael Gentry testified that he tried to call Mr. Clark and even went by Mr. Clark's office

to discuss an appeal, but Mr. Clark was not there. Michael Gentry said his wife also tried without success to call Mr. Clark.

Defendant testified that he never had any discussion with Mr. Clark or his parents about the scope of Mr. Clark's representation. He said Mr. Clark never told him that he was not hired for the appeal or that he did not do federal appellate work. Defendant never saw or talked to Mr. Clark after his federal sentence was imposed, except for a very brief appearance in a Bossier Parish court for sentencing on a related state conviction. He testified that he never discussed an appeal with Mr. Clark at any time. Defendant said he called his mother at some point after sentencing, and she was under the impression that Mr. Clark would file the same thing Defendant's brother's attorney had filed. Defendant learned a few months later that no appeal had been filed for him. His mother then researched the legal issues and filed the Section 2255 motion that is before the court.

**C. No Objection to the PSR**

In addition to the lack of an appeal, Defendant complains in his amended Section 2255 motion that Mr. Clark should have objected at sentencing to the inclusion in the loss calculation of the worker's compensation indemnity and medical expenses incurred because of the policeman's injury.[2] The PSR included those amounts at paragraph 32 and

---

[2] The Government did not oppose the filing of the amendment to the motion, although it reserved all rights to contest the relief sought. The Government has not raised any timeliness defense to the amendment. The amendment should relate back to the original timely motion because both the original and amended claims rely on facts that are similar in time and type. See Mayle v. Felix, 125 S.Ct. 2562 (2005).

recommended a four level increase because the total loss exceeded $800,000. If the improper amounts were subtracted, the total loss would be less than $800,000, and only a three level increase would be warranted.

Stephen Glassell, an attorney for one of the co-defendants, reviewed his client's PSR and faxed a letter to counsel for the co-defendants. Mr. Clark admitted that he received the letter. The letter made several observations about the PSR, including one about the addition of four points for the value of the loss. Mr. Glassell wrote that the medical expenses and new carpet were caused solely by the actions of Regan Gatti, who fired the shots at the officer and who tracked the blood through the house. Mr. Glassell's letter did not specifically attack the loss calculation on the grounds the Fifth Circuit ultimately employed to set it aside.

Mr. Clark made handwritten notes on the back of the last page of Mr. Glassell's letter. He testified that he could not recall whether he took the notes in preparation for a meeting with his client about the PSR or during the meeting with his client. The notes include comments on 10 of the 96 numbered paragraphs in the PSR. The notes appear to be the basis for potential objections, and the word "object" appears at least three times. With respect to paragraph 32 of the PSR, Mr. Clark wrote: "'Loss' is +/- $42,753.25 but also take out 17K for R. G.'s blood." The larger number is the total of the house repairs and medical expenses. Mr. Clark could not recall exactly what his notes meant, but the notes do indicate some awareness on his part of a potential ground for objection to the loss calculation.

Defendant testified that Mr. Clark came to visit him in jail to review the PSR, and Mr. Clark told him that he was going to make a couple of objections at sentencing. Defendant remembered that Mr. Clark said he was going to make some sort of objection about the gun and an objection about the "money issue." Mr. Clark could not recall the specifics of the meeting, but he was sure that he went over every line of the PSR with Defendant.

Mr. Clark did not file any written objection to the PSR, and he did not make any oral objections at the sentencing hearing. He testified that he frankly could not remember why he did not do so, and he could not articulate any strategy or tactical reason for not objecting. He did recall that the loss objection was raised by some co-defendants who were sentenced the same day, but the objection was rejected by the sentencing judge. The Government asked Mr. Clark if he were aware that a prosecutor might seek to deprive a defendant of a reduction for acceptance of responsibility if the defendant made too many objections to a PSR. Mr. Clark did not indicate that such was a motivation for his lack of objection or that any such suggestion was made by the prosecutor in this case.[3]

Some of the co-defendants did object to the inclusion of the officer's medical expenses and worker's compensation benefits, and the Fifth Circuit ultimately vacated the sentences of two defendants who pursued the issue on appeal. The Fifth Circuit held that,

---

[3] A prosecutor might rationally argue that a defendant was not accepting responsibility if the defendant objected to key *facts* in a PSR that related to the defendant's guilt or responsibility, but the objection at issue was a legal argument based on an interpretation of the word "loss" in the guidelines. Defendant did not have to deny his criminal behavior to make this objection.

under the relevant guideline, "loss" is defined as "the value of the property taken, damaged, or destroyed" and the plain language of the definition extends only to impairments to property. Thus, the medical expenses and other costs associated with the injuries suffered by the police officer were not properly included, and the total amount of the loss was less than $800,000.

The two co-defendants who obtained relief on appeal ultimately received the same sentence on remand. Presumably, the change in guidelines calculation made no difference with respect to the possible sentence for one of the defendants. The other defendant's original sentence was still within the properly adjusted guidelines range and was reimposed. Defendant's case is different. If Defendant's guidelines range is calculated in accordance with the Fifth Circuit's decision, the proper range is 168 to 210 months. Thus, Defendant's 226 month sentence on the bank robbery count exceeds the top of the guidelines range by 16 months.

Mr. Clark agreed that his lack of objection meant that an appeal, if taken, would have been only for plain error. He also agreed that if he had raised the issue at sentencing, even if it were rejected by the district court, the issue would have been preserved for appellate review and almost certainly successful if pursued.

**Lack of Objection Warrants New Sentencing**

**A. Performance**

Defendant has the burden of proving two components to establish ineffective assistance of counsel: deficient performance and prejudice. The proper standard for attorney

performance is "reasonably effective assistance" that is to be assessed without the distorting effects of hindsight and evaluated from counsel's perspective at the time, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland v. Washington, 104 S.Ct. 2052, 2064-65 (1984). That is, Defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be considered sound strategy. Strickland, 104 S.Ct. 2065. While counsel's actions enjoy a presumption they are made in the exercise of reasonable professional judgment, the court must also keep in mind that counsel's function "is to make the adversarial testing process work in the particular case." Strickland, 104 S.Ct. at 2066.

A defense counsel may be forgiven if he has a multitude of possible objections or arguments but chooses for strategic reasons to focus his and the court's attention on what he believes to be the best arguments. A resulting conviction or sentence should not, therefore, be thrown out lightly in such a case merely because counsel elected not to argue every possible defense. In this case, there was no strategic selection of objections and arguments. Rather, there was no objection at all.

Defendant pleaded guilty, allowing counsel to focus on the sentencing hearing in an effort to reduce Defendant's exposure and ultimate sentence. Counsel demonstrated through his notes and admitted receipt of Mr. Glassell's letter that he was aware of a potential issue regarding calculation of the loss, and Defendant testified that his counsel said he intended to make an objection regarding the loss. (Counsel did not recall the specifics of his meeting with Defendant about the PSR.) Yet, counsel made no objection and, at the hearing on the

Section 2255 motion, he could not articulate any strategy or other rationale for failing to make the objection.

There has not been a showing that there was Fifth Circuit precedent or other persuasive jurisprudential authority at the time that supported the objection, but when the Fifth Circuit was presented with the issue, it held that the plain language of the guidelines excluded consideration of the worker's compensation payments and medical payments associated with the injuries to the police officer. Reasonably effective counsel would have, at the time of sentencing, raised the loss objection, just as counsel for two co-defendants did. The fact that the sentencing judge rejected the objection when others made it should not excuse the omission. A reasonably effective criminal defense counsel must make an objection that is supported by the plain language of the guidelines and that can reduce his client's sentence by several months even if the sentencing judge indicates disagreement. Moreover, reasonably effective criminal defense counsel do not shy from confrontation and must zealously present their client's arguments. In this case, the performance prong of the Strickland standard has been satisfied. Compare U. S. v. Stricklin, 290 F.3d 748 (5th Cir. 2002) (sentence vacated when counsel failed to object at sentencing to quantity of P2P used to compute sentence when trial evidence indicated the material was a mixture); and U. S. v. Conley, 349 F.3d 837 (5th Cir. 2003) (sentence vacated when counsel failed to object to sentence above the statutory maximum).

**B. Prejudice**

The next issue is whether Defendant has shown prejudice stemming from the error. There is no doubt that, in light of the Fifth Circuit's decision on the co-defendants' case, an objection at sentencing that was pursued on direct appeal would have resulted in the original sentence being vacated. Defendant's current sentence is 16 months more than the guidelines maximum . That additional prison time constitutes prejudice. Glover v. U. S., 121 S.Ct. 696 (2001), Stricklin, 290 F.3d at 752 (if objection had been pursued, proper guidelines range was less than sentence imposed; prejudice was shown).

**C. Remedy**

Section 2255 provides that if the sentence imposed is open to collateral attack, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." It is recommended that the appropriate means of remedying this ineffective assistance claim is to set a date for a new sentencing hearing, at which the court can vacate the original sentence and impose a new sentence. New counsel will (presumably) raise the omitted objection and any other objections he may deem proper.

**Alternative: Out-of-Time Appeal is Warranted**

**A. Introduction**

If a new sentencing hearing is granted, the court need not address Defendant's argument that he is entitled to an out-of-time appeal because his counsel failed to file an appeal. That issue would become moot because a direct appeal will be available following

the entry of judgment imposing the new sentence. The no-appeal claim will, however, be addressed here as an alternative basis for granting collateral relief. For the reasons that follow, an out-of-time appeal is warranted.

**B. Roe: An Overview**

The governing law is set forth in Roe v. Flores-Ortega, 120 S.Ct. 1029 (2000). The petitioner in Roe pleaded guilty to second degree murder and was sentenced to fifteen years to life in state prison. The trial judge told him he could file an appeal within 60 days from the date of sentence and that, if he could not afford counsel, counsel would be appointed to represent him on appeal. The public defender wrote "bring appeal papers" in her file, but no notice of appeal was filed within the permitted time. Petitioner subsequently tried to file a notice of appeal, but the clerk rejected the notice as untimely. Petitioner then sought habeas relief, and the case proceeded to the Supreme Court. The Court judged the claim under the familiar test of Strickland, supra, which requires a showing that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant.

In the context of whether counsel must file an appeal, the Court first held that a lawyer who disregards specific instructions from his client to file a notice of appeal acts in a manner that is professionally unreasonable. Roe, 120 S.Ct. at 1035. At the other end of the spectrum, a petitioner cannot complain of ineffective assistance if he explicitly tells his attorney not to file an appeal and the attorney follows those instructions. Id.

The more difficult question is that presented in Roe (and in this case): Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other? The first inquiry in such a case is to ask "whether counsel in fact consulted with the defendant about an appeal." Roe, 120 S.Ct. at 1035. 'Consult' was said to mean advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. Id.

**C. No Timely Consultation**

Attorney Clark candidly admitted that he never consulted with Defendant or Defendant's family about a possible appeal. There was no evidence that, despite the lack of consultation, Defendant ever expressly stated to Mr. Clark that he did want to pursue an appeal or did not want to pursue an appeal. As Mr. Clark testified, there was no discussion between him and his client regarding an appeal. Accordingly, the next issue is whether defense counsel had a duty to consult about an appeal.

**D. Duty to Consult**

Roe states that if counsel has not consulted with the defendant, the next question is whether counsel's failure to consult with the defendant itself constitutes deficient performance. In other words, when does counsel have an obligation to consult with his client about an appeal? The Court stated that the better practice is for counsel routinely to consult, but the Court could not as a constitutional matter hold that a failure to consult was necessarily unreasonable in every case. The Court posed the following example: a defendant consults with counsel, counsel advises that a guilty plea probably will lead to a two year

sentence, the defendant expresses satisfaction and pleads guilty, the court sentences the defendant to two years as expected, the court informs the defendant of his appeal rights, and he does not express any interest in appealing. If counsel in that case concludes there are no non-frivolous grounds for appeal, he is likely not, said the Court, acting unreasonably if he does not consult regarding an appeal. Another example provided by the Court is when a sentencing court's instructions about appeal rights in a particular case are "so clear and informative as to substitute for counsel's duty to consult." Roe, 120 S.Ct. at 1036.

This case is not square with either of those examples. Judge Walter advised Defendant at sentencing: "You have a right to appeal, and should you appeal, the Clerk will send the Presentence Report under seal to the Court of Appeals." There was no particular elaboration about how to effect an appeal and there was no mention of the deadline for filing a notice of appeal, so the court's remarks in this case do not substitute for counsel's duty to consult. Defendant did plead guilty, which is a "highly relevant factor," Roe, 120 S.Ct. at 1036, but he did not plead guilty based on an agreed or projected sentence, and the stakes in this case are much greater than the two-year sentence in the Roe example. When a sentence of almost 20 years is imposed, the likelihood increases that a court will find that counsel has a duty to consult about a possible appeal. The clear cut examples in Roe where a consultation is not necessary are inapplicable.

Pursuant to Roe, the court determines whether counsel had a duty to consult by examining whether there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), *or* (2) that this

particular defendant reasonably demonstrated to counsel that he was interested in appealing. 120 S.Ct. at 1036. The inquiry must examine all relevant factors in a given case, but the Supreme Court expected that courts would find "in the vast majority of cases" that counsel had a duty to consult about an appeal. Id. at 1037.

Court-appointed counsel for Defendant, at the close of the evidentiary hearing, conceded that Defendant did not reasonably demonstrate an interest in appealing. Counsel argued that a duty arose nonetheless because a rational defendant would want to appeal because, if properly and effectively advised, he would be aware of the non-frivolous ground for appeal with respect to the loss issue that could reduce the guidelines range by several months. The undersigned agrees that, given the length of the sentence imposed and the nonfrivolous ground for appeal, counsel had a duty under the circumstances to consult with his client about an appeal and determine with certainty his client's wishes on the subject. Assumptions and guesses about a client's wishes are not sufficient when the stakes are so high.

**E. Prejudice**

The second component of the Strickland test requires Defendant to show prejudice. Roe explains that Defendant need not show that he would have prevailed on appeal, and even an inability to specify the points he would raise were his right to appeal reinstated will not foreclose the possibility that he can show prejudice. Rather, to show prejudice in a case such as this, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely

appealed." Roe, 120 S.Ct. at 1038-40. Evidence of a non-frivolous ground for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant. Id. at 1039.

There is evidence of a non-frivolous ground for appeal. Just as the existence of that ground helped give rise to a duty to consult, it also establishes prejudice because a client made aware of that ground and counseled about an appeal would have wanted to appeal.

Counsel for the Government argued that there would be no prejudice if Judge Walter were inclined to impose the same sentence on Defendant. That original sentence exceeds the properly calculated guidelines range, so it could be imposed in the post-Booker/Fanfan era, but if a judge imposes a non-guidelines sentence, he must "carefully articulate the reasons" that he concludes the sentence selected is appropriate for that defendant. U. S. v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). The reasons must be fact specific and include aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case that led the court to conclude that the sentence imposed was fair and reasonable. Id. See also 18 U.S.C. § 3553(c). However, the undersigned will not recommend denial of relief based on an assumption that Judge Walter might be inclined to impose a sentence in excess of the guidelines range.

**Conclusion; Relief**

The first recommendation is that Section 2255 relief be granted with respect to the claim that counsel should have objected to the loss issue at sentencing. The appropriate

remedy is to grant a new sentencing hearing, vacate the original sentence and impose a new sentence. Defendant can then pursue a direct appeal, so this first alternative would render moot the original claim that counsel was defective for not filing a direct appeal.

If the court should decline to grant relief with respect to the objection issue but finds that relief is appropriate on the failure to appeal claim, the procedures described in <u>U. S. v. West</u>, 240 F.3d 456 (5th Cir. 2001) must be followed to permit appellate jurisdiction over the out-of-time appeal. <u>West</u> instructs the district judge to reinstate the underlying criminal judgment on the criminal docket. Thereafter, the time for appeal is the 10 days permitted by F.R.A.P. 4(b)(1)(A).

Accordingly;

**IT IS RECOMMENDED** that Defendant's Motion to Vacate (Doc. 252), as amended at Doc. 288, be resolved by granting Defendant a new sentencing hearing at which counsel may raise the loss objection that was the subject of the Amended Motion.

**IT IS FURTHER RECOMMENDED** that, in the event the court decides relief is not warranted with respect to the Amended Motion and the failure to object claim, that the court grant Defendant the remedy of an out-of-time direct appeal by reinstating on the criminal docket Defendant's underlying criminal judgment that is found at Doc. 191, originally entered on February 23, 2004.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 28th day of March, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE